1  Ellen L. Darling (#149627)
   Email: edarling@swlaw.com
2  Samantha K. Feld (#222612)
   Email: sfeld@swlaw.com
3  SNELL & WILMER L.L.P.
   600 Anton Boulevard, Suite 1400
4  Costa Mesa, California 92626-7689
   Phone: (714) 427-7000
5  Fax: (714) 427-7799

6  Attorneys for Defendant
   PLAYTEX PRODUCTS, INC.
7

8                UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  DAVID PAZ, an individual and on behalf of all others similarly situated,<br>12<br>13           Plaintiff,<br>14  vs.<br>15  PLAYTEX PRODUCTS, INC., a Delaware corporation, and<br>16  Does 1 through 100, inclusive,<br>17           Defendants.<br>18<br>19 | CASE NO.: 3:07-CV-2133 JM (BLM)<br><br>Honorable Jeffrey T. Miller<br>Courtroom 16<br><br>**DEFENDANT PLAYTEX PRODUCTS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>DATE:  12/14/07<br>TIME:  1:30 p.m.<br>ROOM:  16<br><br>DATE OF REMOVAL: 11/07/07<br>TRIAL DATE: None |

20

21      Defendant Playtex Products, Inc. ("Playtex") submits the following
22  opposition to Plaintiff David Paz's Motion to Remand for Lack of Subject Matter
23  Jurisdiction.
24  ///
25  ///
26  ///
27  ///
28  ///

556541.2

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................2

II. LEGAL STANDARD ............................................................................................2

III. THE COURT MAY PROPERLY EXERCISE JURIDICTION OVER THIS ACTION BECAUSE THE CLAIMED AMOUNT IN CONTROVERSY EXCEEDS $5,000,000 .......................................................4

    A. Playtex Established to a Legal Certainty That the Amount in Controversy Exceeds $5,000,000 ........................................................5

        1. Playtex's Evidence Demonstrates an Amount in Controversy of Well Over $5 Million .........................................5

        2. Plaintiff Demands Restitution and/or Disgorgement in Excess of $5,000,000 ................................................................8

        3. Plaintiff Demands Equitable Relief In Excess of $5,000,000 ..........................................................................................10

        4. Plaintiff Demands Attorneys' Fees and Punitive Damages .....11

    B. Should the Court Determine the Notice of Removal to Be Deficient, Playtex Requests Leave to Submit Additional Evidence to Assist the Court in its Remand Decision .......................11

    C. Plaintiff's Objections to Playtex's Notice of Removal and Supporting Documentation Should Be Overruled ............................12

        1. Plaintiff's Objections to the Declaration of Brenda Liistro Are Without Merit ....................................................................12

        2. Plaintiff's Objections to Playtex's Citation to a Published, Analogous Case Are Improper ................................................14

IV. CONCLUSION ...................................................................................................15

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1

## TABLE OF AUTHORITIES

2                                                                                                                    **Page**

3  *Abrego v. The Dow Chemical Co.*,
      443 F.3d 676 (9th Cir. 2006) ........................................................................... 4

4  *Allen v. R&H Oil & Gas Co.*,
5     63 F.3d 1326 (5th Cir. 1995) ......................................................................... 12

6  *Cohn v. Petsmart, Inc.*,
      281 F.3d 837 (9th Cir. 2002) ......................................................................... 12
7
   *De Aguilar v. Boeing*,
8     11 F.3d 55 (5th Cir. 1993) ............................................................................... 8

9  In *re Ford Motor Co./Citibank (South Dakota), N.A.*,
      264 F.3d 952 (9th Cir. 2001) ......................................................................... 10
10
   *Galt G/S v. JSS Scandinavia*,
11    142 F.3d 1150 (9th Cir. 1998) ....................................................................... 11

12 *Gaus v. Miles, Inc.*,
      980 F.2d 564 (9th Cir. 1992) ........................................................................... 5
13
   *Gibson v. Chrysler Corp.*,
14    261 F.3d 927 (9th Cir. 2001) ......................................................................... 11

15 *Levine v. BIC, USA, Inc.*,
      No. 07cv1096-LAB, 2007 WL 2406897 (S.D. Cal. August 20, 2007) ............. 14
16
   *Lowdermilk v. U.S. Bank National Association*,
17    479 F.3d 994 (9th Cir. 2007) ....................................................................... 3, 6

18 *Marathon Oil Co. v. Ruhrgas*,
      145 F.3d 211, 225 (5th Cir. 1998) ................................................................... 9
19
   *Moda v. Priceline.com, Inc.*,
20    No. 06-56301, 2006 WL 3327871 (9th Cir. Nov. 16, 2006) ............................. 7

21 *Nowak v. Innovative Aftermarket System, L.P.*,
      No. 4:06CV01622, 2007 WL 2454118 (E.D. Mo. Aug. 23, 2007) ................ 6, 7
22
   *Rippee v. Boston Market Corp.*,
23    408 F. Supp. 2d 982 (S.D. Cal. 2005) ............................................................. 3

24 *Rogers v. Wal-Mart Stores, Inc.*,
      230 F.3d 868 (6th Cir. 2000) ........................................................................... 8
25
   *Sanchez v. Monumental Life Insurance Co.*,
26    102 F.3d 398 (9th Cir. 1996) ......................................................................... 10

27 *Scherer v. Equitable Life Assurance Society of the United States*,
      347 F.3d 394 (2d Cir. 2003) ............................................................................ 3
28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

# TABLE OF AUTHORITIES
## (continued)

Page

*Singer v. State Farm Mutual Insurance Co.*,
 116 F.3d 373 (9th Cir. 1997) .................................................................................. 4, 12

### STATE CASES

*Benson v. Kwikset Corp.*,
 152 Cal. App. 4th 1254 (2007) ..................................................................................... 8

*Colgan v. Leatherman Tool Group, Inc.*,
 135 Cal. App. 4th 663 (2006) ....................................................................................... 9

*Cortez v. Purolator Air Filtration Products Co.*,
 23 Cal. 4th 163 (2000) ................................................................................................. 8

*Dinosaur Development v. White*,
 216 Cal. App. 3d 1310 (1989) ..................................................................................... 8

*People v. Hamilton*,
 45 Cal.3d 351, 363 (1988) ........................................................................................... 9

### FEDERAL STATUTES

28 U.S.C. § 1332(d) ........................................................................................................... 3

Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 .......................... 2

Notice of Removal of Civil Action Under 28 U.S.C.S. § 1441(B) ........................... 3

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

According to the Complaint, Plaintiff David Paz, on behalf of himself and the general public, seeks (1) monetary damages; (2) full restitution and/or disgorgement of "all monies acquired" by Playtex to compensate and restore Plaintiff, as well as each and every member of the proposed class; (3) declaratory and injunctive relief; (4) punitive damages; and (5) attorneys' fees and costs. The damages sought are based on claims that Playtex falsely advertised a "variety" of spill-proof cups as "Made in U.S.A.," and that Plaintiff, purportedly in reliance on this statement, purchased either "several" or "two" cups. Plaintiff then alleges that other members of the general public were defrauded and that as a result of Playtex's false label, they too purchased spill-proof cups with an average retail price of $6.99. Plaintiff further alleges that all of these claimed damages are "ongoing" and "continuing" since consumers are allegedly being "victimiz[ed] each and every day" through Playtex's alleged conduct.

After requesting this comprehensive list of past and future damages, as well as costs and fees, Plaintiff pleads that the amount in controversy does not exceed $4,999,000 – interestingly, a mere $1000 shy of the jurisdictional limit. A cursory review of the Complaint, along with Playtex's uncontroverted evidence that at least 1.3 million cups with the supposed offensive labels were sold in California in the past year, establishes that the claimed amount of controversy well exceeds $5,000,000. Playtex has met its burden and Plaintiff's Motion should be denied.

## II.

## LEGAL STANDARD

This Court has original jurisdiction over this putative class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in relevant part at 28 U.S.C. §§ 1332(d) & 1453). The Class Action Fairness Act

Snell & Wilmer L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1  ("CAFA") generally grants the district courts original jurisdiction over any class
2  action in which: (1) the aggregate amount in controversy exceeds $5,000,000;
3  (2) any member of a class of plaintiffs is a citizen of a state different from any
4  defendant; (3) the primary defendants are not states, state officials, or other
5  government entities against whom the district court may be foreclosed from
6  ordering relief; and (4) the number of members of the plaintiff class is 100 or more.
7  *See* 28 U.S.C. § 1332(d).

8  In this case, Plaintiff does not dispute that there is complete diversity among
9  the parties or that the plaintiff class consists of 100 or more members.[1] The sole
10 issue presented by Plaintiff's Motion is whether the "amount in controversy"
11 requirement is met. Despite Plaintiff's contention that the total amount in
12 controversy does not exceed $4,999,000 – a mere $1,000 less than the jurisdictional
13 limit – Playtex contends that based both on the allegations contained in Plaintiff's
14 Complaint and his claim of continuing and ongoing damages, the monetary amount
15 in controversy, as well as Playtex's costs of compliance with Plaintiff's requested
16 declaratory and injunctive relief, exceeds $5,000,000.

17 In those cases where a party specifically pleads an amount in controversy less
18 than the jurisdictional amount, Playtex agrees that the party seeking to establish
19 jurisdiction, here Playtex, bears the burden of proving "to a legal certainty that the
20 amount in controversy exceeds the statutory minimum." *Lowdermilk v. U.S. Bank*
21 *Nat'l. Ass'n.*, 479 F.3d 994, 998-99 (9th Cir. 2007). However, unlike Plaintiff's
22 assertions in his Motion, the ultimate inquiry in these instances is what amount is
23 put "in controversy" by the plaintiff's complaint, and *not what a defendant will*
24 *actually owe*. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal.
25 2005); *see also Scherer v. Equitable Life Assurance Society of the United States*,

---

[1] Playtex hereby incorporates its Notice of Removal of Civil Action Under 28 U.S.C.S. § 1441(B)(Diversity), filed with this Court on November 7, 2007, and all reservations and contentions contained therein.

556541.2                                     - 3 -
DEFENDANT PLAYTEX PRODUCTS, INC.'S OPPOSITION TO MOTION TO REMAND
Case No. 3:07-CV-2133-JM-BLM

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1   347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount
2   of damages is not what is considered when determining the amount in controversy;
3   rather, it is the amount put in controversy by the plaintiff's complaint).  Thus,
4   Playtex must only present evidence which demonstrates that the *amount in*
5   *controversy* is legally certain to exceed the jurisdictional minimum.

6   In determining whether Playtex has met its evidentiary burden, the court may
7   consider, in addition to the complaint itself, "facts in the removal petition and . . .
8   summary judgment-type evidence relevant to the amount in controversy at the time
9   of removal."  As such, Playtex's burden of proof can be satisfied with the
10  presentation of affidavits and/or declarations which demonstrate to a "legal
11  certainty" that the total amount in controversy is greater than the $5,000,000
12  jurisdictional limit.  *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 690 (9th Cir.
13  2006) (quoting *Singer v. State Farm Mutual Ins. Co.*, 116 F.3d 373, 374, 377 (9th
14  Cir. 1997)).  Playtex did so.

## III.

## THE COURT MAY PROPERLY EXERCISE JURISDICTION OVER THIS ACTION BECAUSE THE CLAIMED AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

19  Plaintiff argues that his choice to plead an amount in controversy only $1,000
20  less than the jurisdictional minimum of $5,000,000 is controlling and that Playtex
21  can offer no evidence to decisively prove that the amount in controversy exceeds
22  $5,000,000.  In a misplaced attempt to avoid federal jurisdiction, Plaintiff also
23  alternatively argues that Playtex fails to present proof that his matter is *valued* at
24  over $5,000,000, or that he *will recover* over $5,000,000.  Contrary to these
25  assertions, the law is settled that Playtex need only establish that the *amount in*
26  *controversy* exceeds the minimum jurisdictional amount.  As discussed below,
27  Playtex produced sufficient evidence to satisfy its burden.
28  / / /

1  **A.  Playtex Established to a Legal Certainty That the Amount in Controversy Exceeds $5,000,000**

   1.  <u>Playtex's Evidence Demonstrates an Amount in Controversy of Well Over $5 Million</u>

As required under the burden of proof, Playtex previously presented this Court with specific "summary judgment-type evidence," i.e., sworn declarations and affidavits, establishing to a legal certainty the *minimum* amount in controversy in this case. Here, Plaintiff seeks restitution for himself and each purported class member based on the number of a variety of cups sold by Playtex, and those that continue to be sold. As set forth in Playtex's Notice of Removal, approximately 1.3 million of the spill-proof cups with the "Made in U.S.A." label were sold in California in the one year prior to removal. Declaration of Brenda Liistro, ¶2, attached as Exhibit 4 to Playtex's Notice of Removal. Based on Plaintiff's own allegation that the average retail price of the subject cups is $6.99, and Playtex's sales figures from November 2006 to October 2007, the retail sales of the cups in California for the twelve months preceding removal totaled approximately $9,087,000. *Id.* Based on these calculations, the restitution claim alone exceeds the minimum jurisdictional limit.

Plaintiff cites two cases in support of his argument that Playtex's evidence is deficient; however, Plaintiff's reliance on these cases is misplaced. In *Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992), the defendant offered "no facts whatsoever" to show that the amount in controversy exceeded the jurisdictional minimum. *Id.* at 567 ("[Defendant] has offered no facts whatsoever to support the court's exercise of jurisdiction. Instead [defendant] simply alleges that the matter in current controversy . . . exceeds the sum of $50,000."). In contrast, Playtex's Notice in this case clearly sets forth the factual basis to establish an amount in controversy exceeding $5,000,000.

///

1  The second case cited by Plaintiff is similarly inapposite. The defendant in *Lowdermilk v. U.S. Bank Nat'l. Ass'n.*, attempted to meet the "legal certainty" standard of proof with regard to multi-variable and individualized, wage-based damage claims by filing a declaration that used a simplistic "x times y" equation to calculate the total amount in controversy. *Lowdermilk*, *supra*, 479 F.3d at 1001-1002. The Ninth Circuit found the figures too speculative to meet the legal certainty test based on the extensive variation between the types and amounts of unpaid wages owed to workers. *Id.*

*Lowdermilk* is distinguishable from the present case for a number of reasons, most importantly, the difference in the lack of concrete data related to individual class members and the variable nature of the damages per individual. Here, no such issues exist. Although a class size in excess of 100 members is not yet determinable, there are clearly ascertainable damages per unit, identified by the Plaintiff himself as approximately $6.99 per cup. Additionally, based on the allegations in Plaintiff's Complaint, there was a readily defined number of units sold, determined by Playtex to be approximately 1.3 million from November 2006 to October 2007. The fact that a class size in excess of 100 members is unknown at this point does not affect the ultimate amount of restitution that Plaintiff seeks to recover. Whether there are 100 or 3,000 class members, the *calculation of funds which will form the basis for a restitution or disgorgement award remains a function of the number of cups sold times the average retail price* – currently calculated to be well over $5 million for the single year preceding removal. This number does not take into account the ongoing daily damages alleged by Plaintiff as a result of continued consumer purchases of these cups.

The discussion in *Nowak v. Innovative Aftermarket Sys., L.P.*, No. 4:06CV01622, 2007 WL 2454118 (E.D. Mo. Aug. 23, 2007) is instructive. In distinguishing the multi-variable claims in *Lowdermilk* from more simple claims similar to those in the present action, the *Nowak* court cited a Ninth Circuit case

1   with factual similarities to the present action. *Id.* at *14 (citing the Ninth Circuit's
2   decision in *Moda v. Priceline.com, Inc.*, No. 06-56301, 2006 WL 3327871 (9th Cir.
3   Nov. 16, 2006)(unpublished)).[2] The *Nowak* court noted the Ninth Circuit's swift
4   conclusion in *Moda v. Priceline.com, Inc.*, that the defendant provided sufficient
5   evidence to prove an amount in controversy over CAFA's jurisdictional minimum.
6   As discussed in *Nowak*, the *Moda* plaintiffs alleged that the defendant engaged in
7   deceptive advertising of online hotel rooms. *Id.* at *14.  To meet its burden to
8   establish federal subject matter jurisdiction over the class action, the defendant
9   produced evidence of (1) the number of rooms sold to consumers during the
10  relevant time period, and (2) the amount of revenue generated from the room sales.
11  *Id.* at *14.  The court held that the function of *the number of persons affected by the*
12  *alleged conduct and the total amount in damages* was sufficient to prove that the
13  amount in controversy exceeded the $5,000,000 jurisdictional requirement. *Id.* at
14  *15.

15  Here, Playtex submitted evidence demonstrating that between November
16  2006 and October 2007 *alone*, Playtex sold approximately 1.3 million spill-proof
17  cups in California with some form of a "Made in U.S.A." label.  Playtex further
18  submitted evidence of the retail sales profits from the subject cups, utilizing
19  Plaintiff's own alleged calculation of average retail price.  Guided by the analysis in
20  *Nowak*, the evidence produced by Playtex establishes with legal certainty that the
21  amount in controversy well exceeds the $5,000,000 jurisdictional requirement.

22  Notably, Plaintiff does not dispute the facts argued by Playtex to establish
23  jurisdiction, such as the number of cups sold or the use of Plaintiff's claim of
24  average cup price.  It is also worthy to note how carefully Plaintiff avoids the

---

[2] The *Moda* case discussed in *Nowak v. Innovative Aftermarket Sys., L.P.*, was decided a month and a half prior to the amendment of Ninth Circuit Rule 36-3 allowing for the direct citation in this Circuit to unpublished opinions issued on or after January 1, 2007.  Counsel has not located a rule limiting citation to the published opinions of courts which may have relied upon unpublished cases in formulating their decision.

556541.2                                - 7 -

1  normal means for plaintiffs who really do not want more than $5,000,000 in order
2  to avoid federal jurisdiction – an offer to stipulate to less than $5,000,000 damages.
3  *E.g.*, *De Aguilar v. Boeing*, 11 F.3d 55 (5th Cir. 1993); *cf. Rogers v. Wal-Mart*
4  *Stores, Inc.*, 230 F.3d 868 (6th Cir. 2000) (such stipulations are not binding on issue
5  of jurisdiction). Plaintiff does not even argue that less than $5,000,000 is at issue –
6  he carefully limits his contention to the proposition that Playtex has not carried its
7  burden of making a sufficient showing that the minimum jurisdictional amount has
8  been satisfied.[3] As such, this is not a case in which the Court must decide which
9  side to believe, and thus must decide whether to defer to the Plaintiff's
10 characterization of his claims on the theory that "the plaintiff is the master of his
11 complaint." The Court need only look to the damages claimed by Plaintiff to
12 determine that the minimum jurisdictional amount is satisfied.

   2. <u>Plaintiff Demands Restitution and/or Disgorgement in Excess of $5,000,000</u>

15   Pursuant to California law, courts are given wide latitude in formulating
16 relief orders regarding restitution and disgorgement in unfair competition law
17 actions. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 180
18 (2000). "Restitutionary awards encompass quantifiable sums one person owes to
19 another . . . ." *Id.* at 178. Restitution awards are for "money that once had been in
20 the possession of the person to whom it [is] to be restored." *Id.* at 177. In
21 California, the term 'restitution' has frequently been extended to include
22 "compensation, reimbursement, [or] indemnification," thus supporting the use of
23 sales figures as a way to calculate the amount in controversy in this case. *Dinosaur*
24 *Dev. v. White*, 216 Cal.App.3d 1310, 1315 (1989); see generally, *Benson v. Kwikset*
25 *Corp.*, 152 Cal.App.4th 1254 (2007) (where "the sole issue [is] the deceptive nature

---

[3] Plaintiff fails to offer any dollar figure approximating damages in his Complaint other than to allege that the amount in controversy does not exceed $4,999,000. Plaintiff also fails to take advantage of the opportunity to do so in his moving papers.

556541.2     - 8 -

1   of defendants' country of origin product labeling[,] . . . offering refunds or
2   repackaging of the same merchandise [is] permissible.").[4]

3   Although Plaintiff cited the California Court of Appeal's decision in *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663 (2006) for the proposition that a measure of damages is not based on the whole, or even a percentage, of the retail sales figures, he confuses the legal standard applied to removal under CAFA. Here, the Court is being asked to determine the amount in controversy *at the time of removal*, not the proper award of damages after prolonged litigation. Further, the *Leatherman* court's holding was not what the Plaintiff leads this Court to believe. In reversing a restitution order awarding the plaintiffs 25% of the defendant's gross receipts, the *Leatherman* court found a lack of justification for what it deemed to be an arbitrary award unrelated to any evidence before the trial court. The *Leatherman* court *made no determination as to how retail sales figures could play into the fashioning of a restitution award*, it simply held that although a "court[']s[] discretion is very broad as to the [restitution] remedy it awards," there was no evidence to support the amount of the award in that specific case. *Id.* at 695 (citations omitted).

Plaintiff's argument that there is no way to use Playtex's sales figures to determine the various iterations of possible restitution orders at this stage in the litigation, and his reliance on *Leatherman*, is without merit. While it cannot be said with certainty that the Court in this case will eventually issue any award, let alone a restitution award approximating a full refund to each of the class members (especially in light of Playtex's belief that the entire case is without merit), what can be said with certainty is that, based on the California case law cited above, the

---

[4] Playtex recognizes that because the judgment in *Benson v. Kwikset Corp.*, was vacated, "that decision, of course, is a nullity and as such has no binding force." *People v. Hamilton*, 45 Cal.3d 351, 363 (1988); *see also Marathon Oil Co. v. Ruhrgas*, 145 F.3d 211, 225 n.23 (5th Cir. 1998)("A vacated decision, while persuasive, is no longer binding precedent."). Playtex cites to *Benson v. Kwikset Corp.*, solely as an example of restitution orders generally deemed permissible.

556541.2                                   - 9 -

Court's legal arsenal contains an order that could require Playtex to refund the purchase price of every spill-proof cup identified in Plaintiff's complaint. As Playtex's evidence demonstrates, it is legally certain that the monetary impact of such an order, and thus the amount in controversy, would be, *at a minimum*, in excess of $5,000,000. In fact, it is Plaintiff that points out in his moving papers that assuming Playtex sold six million of the subject spill-proof cups during the past four years, the overall retail sales figure (and thus the amount available for purposes of restitution or disgorgement) would be $41,940,000! Since such an award remains possible based simply on Plaintiff's allegations, the amount in controversy at this stage of the litigation necessarily includes the total estimated retail sales of the subject cups.

### 3. Plaintiff Demands Equitable Relief In Excess of $5,000,000

In addition to restitution, Plaintiff seeks other equitable remedies including declaratory and injunctive relief. The amount in controversy for equitable relief is determined by either the potential value to the plaintiff *or* the potential cost to the defendant, whichever is greater. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996). "In other words, where the value of a plaintiff's potential recovery . . . is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes." *In re Ford Motor Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). Here, the cost to Playtex is astounding.

Based on the current allegations in the Complaint, in order to comply with an order enjoining Playtex from marketing its spill-proof cups with the term "Made in U.S.A." on either the cup or the packaging, Playtex would be required to expend considerable monetary and human capital. Given the number of cups implicated by Plaintiff's allegations, Playtex's compliance with such an order would necessarily include the recovery and removal of these cups from the marketplace, and, at the

1 very least, the re-packaging and re-distribution of the cups with the allegedly
2 correct labeling. The considerable costs and expenses associated with an injunction
3 must be aggregated into the total amount in controversy.

                4.     <u>Plaintiff Demands Attorneys' Fees and Punitive Damages</u>

Neither the retail sales figure nor the cost of equitable relief takes into account Plaintiff's additional claims for attorneys' fees and punitive damages. Both claims are properly included in determining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (recognizing that attorneys' fees are included in determining the amount in controversy, regardless of whether the fee award is mandatory or discretionary); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action."). The amount in controversy here must include consideration of both fees and costs incurred not only by Plaintiff but by each purported class member.

Thus, due to (1) the costs that the litigation of this lawsuit could impose on Playtex and (2) the damages and other relief that Plaintiff stands to gain through the pending action, the amount in controversy in this proceeding exceeds $5,000,000 and the case was properly removed under diversity jurisdiction.

**B.  Should the Court Determine the Notice of Removal to Be Deficient, Playtex Requests Leave to Submit Additional Evidence to Assist the Court in its Remand Decision.**

Should this Court find Playtex's Notice of Removal to be deficient, the Court need not remand the case immediately to state court. The Court may undertake an independent investigation of the amount in controversy, requiring the parties, if necessary, to submit additional evidence to assist the Court in making this determination:

///

///

> [The] appropriate procedure for determining the amount in controversy on removal … [is for the district court to] … consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. If not, the court may consider facts in the removal petition, and may "require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal."

*Singer v. State Farm Mutual Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997), citing *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335-1336 (5th Cir. 1995). The Ninth Circuit has frequently upheld the broad discretion of the district courts to consider supplemental evidence later proffered by a removing defendant, which was not originally included in the removal notice. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002).

As discussed above, Playtex presented legally certain evidence that, when assessed in combination with the allegations from Plaintiff's Complaint, demonstrates that the amount in controversy in this action well exceeds $5,000,000. However, if after examining the allegations of the Complaint and Playtex's evidence, as set forth in the Notice of Removal, the Court remains uncertain as to whether or not the jurisdictional minimum is met, Playtex respectfully requests that the Court invite the parties to submit additional evidence on this issue.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**C.   Plaintiff's Objections to Playtex's Notice of Removal and Supporting Documentation Should Be Overruled**

    1.   <u>Plaintiff's Objections to the Declaration of Brenda Liistro Are Without Merit</u>

Plaintiff objects to virtually every numbered paragraph of Brenda Liistro's Declaration based, in each instance, on an incorrect application of the Federal Rules of Evidence ("FRE").

As an initial matter, Playtex is not bound to exclude from its declaration and motion what Plaintiff deems to be inconvenient factual statements regarding the number of potentially at-issue cups sold during the past year, and the financial implications of an order for restitution or disgorgement. The fact that Plaintiff disagrees with Playtex's declaration of the facts is not a proper evidentiary objection. Plaintiff's objections to paragraphs 1, 2, and 3 of the Declaration of Brenda Liistro on this ground should be overruled.

Plaintiff also misunderstands the "best evidence rule." This rule, FRE 1002, is more accurately referred to as the "original document rule." The rule requires production of the original document when a party attempts to prove its contents. In no instance has Playtex attempted to prove the contents of any written record, but rather that certain sales of cups with the "Made in U.S.A." label, totaling approximately 1.3 million, took place. Similarly, Playtex has not attempted to introduce any "writing or recorded statement" as part of the Declaration of Brenda Liistro. Therefore, FRE 106 is entirely inapposite. Plaintiff's objections to paragraphs 1 and 2 of the Declaration of Brenda Liistro on this ground should be overruled.

All objections based on FRE 602 are misplaced as Ms. Liistro specifically states that she has sufficient knowledge of the facts in her declaration based on her employment and position at Playtex. All objections based on a "lack of foundation" are also improper as the appropriate foundation was laid for each

assertion. Plaintiff's objections to paragraphs 1 and 2 of the Declaration of Brenda Liistro on this ground should be overruled.

Finally, all of Plaintiff's relevance objections under FRE 402 and 403 should be overruled in every instance as there is nothing in Ms. Liistro's Declaration that is "confusing or misleading," and all of Ms. Liistro's statements are extremely relevant given that they tend to make the existence of any fact that is of consequence to the determination of the motion to remand more or less probable than it would be without the Declaration. In particular, with regard to paragraph 3, it is certainly relevant to a motion to remand hearing, and a determination as to the amount in controversy, that a future order requiring restitution or disgorgement would lead to a pecuniary loss *greater* than the jurisdictional minimum of $5,000,000. Plaintiff's objections to paragraph 3 of the Declaration of Brenda Liistro on relevancy grounds should be overruled.

 2. Plaintiff's Objections to Playtex's Citation to a Published, Analogous Case Are Improper

It has long been the case that an attorney representing his client in an adversary proceeding is not required to present an impartial exposition of the law. As discussed above, Playtex is not bound to exclude information from its case merely because the inclusion may be prejudicial to Plaintiff's case. In fact, it is ridiculous for Plaintiff to even suggest that Playtex's submission of, and reference to, *Levine v. BIC, USA, Inc.*, No. 07cv1096-LAB, 2007 WL 2406897 (S.D. Cal., August 20, 2007), an on-point, published case from the *same federal district* in which this case is now pending, was improper. Further, the fact that the case was filed by Plaintiff's attorney is not classified information.

In claiming the irrelevance of *Levine*, an argument better suited to the memorandum of points and authorities, Plaintiff erroneously argues (without citation) that relevance is predicated on such lofty concepts as law of the case, *res judicata*, and collateral estoppel. Plaintiff's argument is devoid of citation because

556541.2

- 14 -

there are no such rules governing citation to analogous authority – if such rules existed, they would be violated each and every time a legal brief citing persuasive authority was filed in any court in this nation.  Plaintiff's objections to the citation and submission of *Levine* on relevancy grounds should be overruled.

Finally, Playtex did not request that the Court take judicial notice of the published opinion in *Levine*, nor is Playtex required to do so in order to present the Court with relevant and analogous authority.  Plaintiff's objections to the citation and submission of *Levine* as related to judicial notice should be overruled.

## IV.

## **CONCLUSION**

The facts and evidence set forth above are sufficient to show that (1) Plaintiff's proposed class action, as pled, implicates a claim for monetary damages and equitable relief that far exceeds the minimum jurisdictional amount of $5,000,000, let alone Plaintiff's claim of $4,999,000, and (2) removal was therefore completely justified.  As such, Defendant Playtex Products, Inc., respectfully requests that this Court deny Plaintiff David Paz's Motion to Remand for Lack of Subject Matter Jurisdiction.


Dated: November 30, 2007                    SNELL & WILMER L.L.P.


                                            By://Ellen L. Darling
                                                Ellen L. Darling
                                                Samantha K. Feld
                                                Attorneys for Defendant
                                                Playtex Products, Inc.
                                                edarling@swlaw.com

<u>PROOF OF SERVICE</u>

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, California 92626.

On November 30, 2007 I served, in the manner indicated below, the foregoing document described as:

**DEFENDANT PLAYTEX PRODUCTS, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION**

on the interested parties in this action:

| **PLAINTIFF COUNSEL** | John H. Donboli, Esq.<br>J.L. Sean Slattery, Esq.<br>Del Mar Law Group, LLP<br>322 Eighth Street, Suite 101<br>Del Mar, California 92014<br>858.793.6244<br>858.793.6005, fax |
|---|---|

__X__   BY E-FILING: I caused such document to be sent electronically to the court; pursuant to the Southern District of California Electronic Case Filing Administrative Policies and Procedures, Section 2.d., electronic filing constitutes service upon the parties.

__X__   FEDERAL: I declare that I am employed in the office of a member of the bar of this Court, at whose direction the service was made.

EXECUTED on November 30, 2007, at Costa Mesa, California.

                          //s//Cheryl Wynn
                          Cheryl Wynn

Snell & Wilmer L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

556541.2

- 16 -

DEFENDANT PLAYTEX PRODUCTS, INC.'S OPPOSITION TO MOTION TO REMAND
Case No. 3:07-CV-2133-JM-BLM