1  JOHN DONBOLI (SBN: 205218)
   jdonboli@delmarlawgroup.com
2  JL SEAN SLATTERY (SBN: 210965)
   sslattery@delmarlawgroup.com
3  DEL MAR LAW GROUP, LLP
   322 8th Street, Suite 101
4  Del Mar, CA 92014
   Telephone: (858) 793-6244
5  Facsimile: (858) 793-6005

6  Attorneys for Plaintiff: David Paz and all
   others similarly situated

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID PAZ, an individual and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>PLAYTEX PRODUCTS, INC., a Delaware Corporation, and DOES 1 through 100, inclusive,<br><br>　　　　　　　Defendants. | CASE NO. 3:07-cv-2133-JM-BLM<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>**[28 U.S.C. § 1447]**<br><br>Date:　　　　December 14, 2007<br>Time:　　　　1:30 p.m.<br>District Judge:　Hon. Jeffrey T. Miller<br>Room/Floor:　Room 16 / 5th Floor<br><br>**[NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT]** |

　　Plaintiff DAVID PAZ ("Plaintiff") hereby submits this Reply brief in support of Plaintiff's Motion to Remand for Lack of Subject Matter Jurisdiction.

**I.　　INTRODUCTION**

　　In determining the amount in controversy in a removal action, the Court does not consider claims for statutory damages which cannot be recovered under the facts alleged in the complaint. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404-05 (9th Cir. 1996). Defendant PLAYTEX PRODUCTS, INC.'s mistaken understanding of Ninth Circuit law in this

regard forms the basis of its erroneous position set forth in the Opposition to Plaintiff's Motion to Remand For Lack of Subject Matter Jurisdiction ("Opposition"). The crux of Defendant's position is that the amount in controversy undoubtedly exceeds $5,000,000 based on Defendant's retail sales figures during the relevant statutory time period, the costs of compliance to Defendant should this Court grant an injunction, and the inclusion of Plaintiff's demand for attorneys' fees and punitive damages.

Defendant is incorrect in several regards:

(1) First, any removal analysis must be conducted in light of the Ninth Circuit Court of Appeals' holding in *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994 (9th Cir. 2007) that Plaintiffs are the master of their complaint and may plead that the damages at issue are less than that required for diversity jurisdiction in federal court in order to avoid federal jurisdiction. *Id.* at 998-99. Where a plaintiff does so, the court "need not look beyond the four corners of the complaint to determine whether the CAFA jurisdictional amount is met." *Id.* at 998. Furthermore, where "there is no evidence of bad faith, the defendant must not only contradict the plaintiff's own assessment of damages, but must overcome the presumption against federal jurisdiction" and show with a "legal certainty" that the amount in controversy exceeds $5 million. *Id.* at 999. Although not insurmountable, the legal certainty standard sets a high bar for Defendants. *Id.* at 1000.

(2) Second, the measure of restitution is not defined by Defendant's retail sales figures. In fact, the Complaint never requests restitution to Class Members of Defendant's overall retail sales or even its gross sales relating to Defendant's sale of spill-proof cups. Rather, the Complaint prays for damages according to proof as per the seminal case of *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663 (2006). (Complaint, Prayer for Relief ¶ 2 at page 11). Moreover, Plaintiff's references to restitution arise within the context of Plaintiff's second and third cause of action for violations of California Business & Prof. Code §§ 17200 *et seq*. and 17533.7 (collectively "UCL") (Complaint, ¶ 46,

|   |   |   |
|---|---|---|
| 1 |   | Prayer for Relief, ¶ 5).  As fully set forth below, private litigants have no |
| 2 |   | independent cause of action for damages under California's unfair competition |
| 3 |   | statutes and Defendant's conclusory and irrelevant retail sales figures cannot be |
| 4 |   | recovered under the facts alleged in the Complaint. |
| 5 | (3) | Third, Defendant claims that the costs in complying with an injunction "is |
| 6 |   | astounding" and the "considerable costs and expenses associated with an |
| 7 |   | injunction must be aggregated into the total amount in controversy" (Opposition, |
| 8 |   | page 10, line 22 and page 11, lines 2-3).  Defendant is simply wrong in its |
| 9 |   | assertion.  The relevant CAFA analysis does <u>not</u> include a calculation of "interest |
| 10 |   | and costs" pursuant to the express mandate of 28 U.S.C. § 1332(d)(2) and |
| 11 |   | contrary to Defendant's representations Ninth Circuit case law does <u>not</u> permit for |
| 12 |   | the aggregation of compliance costs in class action cases.  *See In re Ford Motor* |
| 13 |   | *Co./Citibank (South Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001). |
| 14 | (4) | Fourth, Defendant fails to articulate with specificity how an award of attorneys' |
| 15 |   | fees and/or punitive damages necessarily places the amount in controversy above |
| 16 |   | $5,000,000 to a "legal certainty."  Just as the bare allegations set forth in *Gaus v.* |
| 17 |   | *Miles*, 980 F.2d 564 (9th Cir. 1992), mere allegations that "[n]either the retail sales |
| 18 |   | figure nor the cost of equitable relief takes into account Plaintiff's additional |
| 19 |   | claims for attorneys' fees and punitive damages…Both claims are properly |
| 20 |   | included in determining the amount in controversy" does not overcome the strong |
| 21 |   | presumption against removal jurisdiction nor satisfy defendant's burden of |
| 22 |   | establishing the amount in controversy.  *Id.* at 567 [finding that defendant's bald |
| 23 |   | recitation that the amount in controversy exceeded $50,000 without identifying |
| 24 |   | any specific factual allegations or provisions in the complaint that might support |
| 25 |   | that proposition, provoked *sua sponte* remand]. |
| 26 | In light of the following authority, Defendant has failed to satisfy to a legal certainty that | |
| 27 | federal subject matter jurisdiction exists in this case.  In particular, Defendant has failed to | |
| 28 | establish that the amount in controversy exceeds $5,000,000 exclusive of interests and costs.  As | |

1  fully set forth below, Plaintiff respectfully submits that federal jurisdiction does not exist in this
2  matter and that this case should be remanded to state court.

3  **II.      DEFENDANT FAILED TO PROVE THAT DAMAGES EXCEED $5 MILLION**

4  Federal courts are courts of limited jurisdiction and have "original jurisdiction" only
5  where there is diversity of citizenship, the action is between citizens of different states, and the
6  amount in controversy exceeds $5,000,000 dollars, exclusive of fees and costs. 28 U.S.C.
7  § 1332(d). In cases such as this case, in which plaintiff's state court complaint specifies a
8  particular amount of damages (i.e., damages do not exceed $4,999,000), the defendant bears the
9  burden of proving to a "legal certainty" that the amount in controversy requirement is met and
10 that removal is proper. *Lowdermilk*, 479 F.3d at 998; *Sanchez v. Monumental Life Ins. Co.*, 102
11 F.3d 398, 404 (9th Cir. 1996). The underlying rationale was set forth in *Lowdermilk* as follows:

> By adopting "legal certainty" as the standard of proof, we guard the presumption against federal jurisdiction and preserve the plaintiff's prerogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court. *See St. Paul Mercury*, 303 U.S. at 288-90. Such a standard also maintains symmetry in our rules requiring legal certainty as the standard of proof; for instance, we already require that a defendant seeking remand for a case initially filed in federal court must show with "legal certainty" that the claim is actually for less than the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 401-02 (9th Cir. 1996).

*Id.*

The burden of establishing removal jurisdiction is on the proponent of federal jurisdiction. *Lowdermilk*, 479 F.3d at 997; *see Serrano v. 180 Connect, Inc., et al.*, 478 F.3d 1018 (9th Cir. 2007). As Defendant is the proponent of federal jurisdiction in this case, it has the burden of establishing jurisdiction, which it failed to meet.

**A.      The Standard for Calculating Statutory Damages**

As referenced above, in determining the amount in controversy in a removal action, the Court does not consider claims for statutory damages which cannot be recovered under the facts alleged in the complaint. *See Sanchez*, 102 F.3d 398 at 404-05 [despite plaintiff's request for treble punitive damages pursuant to Cal. Civil Code § 3345 in the complaint, Section 3345 did not allow for trebling of contract damages as sought by plaintiff; therefore, defendant failed to

meet its burden of showing the amount-in-controversy requirement was met]. The Complaint seeks "[p]ursuant to Business & Professions Code Section 17204…restitution to compensate, and to restore all persons in interest, including all Class members, with all monies acquired by means of Defendant's unfair competition to the extent permitted by California." (Complaint, Prayer for Relief ¶ 5 at page 11). As a matter of law, Plaintiff did not and does <u>not</u> seek Defendant's overall retail sales or gross profits from the sale of its spill proof cups because it is not the proper measure of damages in this case.

### B. The Measurement of Restitution to Class Members Is Not Defendant's "Retail Sales Figures" or "Gross Profit"

Plaintiff's references to restitution arise within the context of Plaintiff's UCL causes of action. Private litigants have no independent cause of action for damages under the unfair competition statutes. *Mai Systems Corporation v. UIPS* (N.D. Cal. 1994) 856 F.Supp. 538, 541. "Instead, their remedies are strictly limited to injunctive relief and restitution, which may include disgorgement of illicit profits to injured parties." *Id*. (citing *E.W. French & Sons, Inc. v. General Portland Inc.,* 885 F.2d 1392, 1401 (9th Cir.1989)). Accordingly, Plaintiff's claim for restitution must be analyzed within the context of a UCL claim, which as a matter of law only relates to the equitable claim of restitution. See California Business & Prof. Code § 17203.

The award of restitution is discretionary. Section 17203 enables the Court to "make such orders or judgments…as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition…or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

The California Supreme Court set forth in *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003), that under California's UCL, an individual may recover profits or money in which the individual has a vested interest. *Id*. at 1148-49. Vested interest is defined by Black's Law Dictionary as being "unconditional," "absolute," and "not contingent." Plaintiff and Class Members do not have an unconditional or absolute interest to all of Defendant's overall retail sales because the award of restitution pursuant to a UCL claim is "contingent" as it

1 is based on the Court's discretion. See California Business & Prof. Code § 17203. It is also not
2 "absolute" in that the Court must determine what percentage, if any, of the retail sales figures are
3 due to the unfair business practice. Furthermore, in determining the amount in controversy
4 requirement, the Court should analyze the amount in controversy in light of the seminal case of
5 *Colgan v. Leatherman Tool Group, Inc.* (See discussion *infra*).

**C.  The Seminal Case of *Colgan v. Leatherman Tool Group, Inc.* Sets The Appropriate Measure of Damages In This Case**

8 Defendant asserts in the Opposition that "[s]ince such an award [of $41,940,000] remains
9 possible based simply on Plaintiff's allegations, the amount in controversy at this stage of the
10 litigation necessarily includes the total estimated retail sales of the subject cups." (Opposition, p.
11 10, lines 8-11). Defendant again misconstrues the relevant CAFA analysis because Plaintiff's
12 prayer for restitution is not analyzed pursuant to a theoretical damages award that is unsupported
13 by California law.

14 The measure of statutory damages in this case, as set forth in *Colgan v. Leatherman Tool
15 Group, Inc*., is not measured by Defendant's overall retail sales figures relating to the sales of its
16 spill-proof cups in California or even by 25% of its "gross profits." *Id*. at 700 [Although the
17 *Leatherman* case was remanded on appeal based on the absence of evidence to support the
18 amount of restitution awarded, the trial court rejected as "'inequitable' a percentage of
19 Leatherman's gross profits as an appropriate measure of either the unlawful benefit to
20 Leatherman or the amount necessary to restore consumers to the position in which they would
21 have been but for the unlawful conduct."]. (Complaint, Prayer for Damages at ¶ 2).

22 Accordingly, the measure of damages in this case is substantially less than Defendant's
23 overall "retails sales figures" or "gross profits." Any evidence cited by Defendant to date is
24 irrelevant and not dispositive of the amount in controversy issue. Simply stated, the Complaint
25 does not allege damages in excess of $5,000,000 dollars and Defendant fails to establish to a
26 "legal certainty" that damages exceed $5,000,000 dollars.
27 / / /
28 / / /

**D.    The CAFA Analysis Should Be Conducted Within the Four-Corners of the Complaint**

In cases such as this, in which a plaintiff pleads an amount in controversy of less than $5,000,000, the court "need not look beyond the four corners of the complaint to determine whether the CAFA jurisdictional amount is met." *Lowdermilk*, 479 F.3d at 998. Notwithstanding the afore-mentioned case law, Defendant submitted a sparse and conclusory declaration from Ms. Brenda Liistro, which Plaintiff properly objected to as irrelevant, lacking foundation, and violative of the best evidence rule to the extent Ms. Liistro's declaration is based on her review of business records, in an attempt to satisfy the "high bar" of proving that the amount in controversy in this matter exceeds $5,000,000. Defendant falls short of its requirement in this regard because a plain reading of the Complaint indicates that the amount in controversy does not exceed $4,999,000. Even though Defendant had an opportunity to present additional declarations, which it failed to do, it now asserts that this Court should decline to remand this case to state court and solicit supplemental evidence from the parties "[s]hould this Court find Playtex's Notice of Removal to be deficient." (Opposition, page 11, lines 22-23). This assertion promotes inefficiency and runs afoul of the holding in *Lowdermilk*. In fact, the case cited by Defendant states that the "district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy…If not, the court may consider facts in the removal petition, and may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Singer v. State Farm Mutual Automobile Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). It is facially apparent in reviewing the Complaint that the amount in controversy does not exceed $5,000,000. As such, there is no need for any additional factual inquiries by way of supplemental declarations in this matter.

**E.    The CAFA Analysis is "Exclusive of Interest and Costs" and Defendant Is Not Permitted to Aggregate its Costs of Compliance Should an Injunction Be Granted**

28 U.S.C. § 1332 provides that "[i]n any class action, the claims of the individual class

1 members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, **exclusive of interest and costs**." Id. (emphasis added). Notwithstanding the prohibition on including its costs in the relevant CAFA analysis, Defendant claims that the costs associated with compliance with an injunction carries this case over the jurisdictional amount threshold under the so-called "either viewpoint" rule, which Defendant analyzes pursuant to *In re Ford Motor Co./Citibank (South Dakota), N.A.* ("*In Re Ford*"), 264 F.3d 952, 958 (9th Cir. 2001). Defendant, however, completely misinterprets *In re Ford*, by claiming that "where the value of a plaintiff's potential recovery . . . is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes…[and the] cost to Playtex is astounding." (Opposition, page 10, lines 17-21). The court in *In Re Ford* merely recited the "either viewpoint" rule for purposes of rejecting it because it only applies to single-plaintiff cases. Id. at 958.

Specifically, the Ninth Circuit Court of Appeals held (in both *In re Ford* and *Snow v. Ford Motor Co.*, 561 F.2d 787, 790 (9th Cir. 1977)) that "[w]e have specifically declined to extend the 'either viewpoint rule' to class action suits… regardless of whether the requested class has been certified." *In re Ford,* 264 F.3d at 958. As such, Defendant is incorrect in its assertion in this class action case that "due to (1) the costs that the litigation of this lawsuit could impose on Playtex and (2) the damages and other relief that Plaintiff stands to gain through the pending action, the amount in controversy in this proceeding exceeds $5,000,000 and the case was properly removed under diversity jurisdiction." (Opposition, page 11, lines 15-18).[1]

---

[1] The court in *In re Ford* also rejected a similar argument that the administrative costs of reinstating and maintaining the rebate program "would be the same whether it is done for one plaintiff or for six million." *Id.* at 960. The court reasoned that if "this argument were accepted, and the administrative costs of complying with an injunction were permitted to count as the amount in controversy, 'then every case, however trivial, against a large company would cross the threshold.'" Id. at 961 (citing *In re Brand Name Prescription Drugs Antitrust Litig*. 123 F.3d 599, 609 (7th Cir. 1997). As in *In re Ford Motor Co./Citibank (South Dakota), N.A*., the aggregation of claims is not permitted in cases such as this that do not involve "a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy." These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res.'" *Id.* at 959.

In this case, each putative class member purchased Defendant's spill proof cups individually, not as a group. This case does not involve a common fund or a joint interest among purchasers of Defendant's spill proof cups; rather, it involves a collection of individual claims based on individual consumers' purchasing decisions. Because the putative class members in this case do not in any sense possess joint ownership of, or an undivided interest in a common res, their claims are separate and distinct. As such, Defendant is not permitted to aggregate its costs of compliance for purposes of this CAFA analysis.

### III. CONCLUSION

In conclusion, Defendant fails to satisfy its high burden of proof pursuant to a CAFA analysis. As such, Plaintiff respectfully submits that this Court has no subject matter jurisdiction over this matter and this case should be remanded back to state court.

Dated: December 6, 2007

Respectfully submitted,

DEL MAR LAW GROUP, LLP

by s/John H. Donboli
JOHN H. DONBOLI
E-mail: jdonboli@delmarlawgroup.com
JL SEAN SLATTERY
E-mail: sslattery@ delmarlawgroup.com
Attorneys for Plaintiff DAVID PAZ, an individual and on behalf of all others similarly situated